## PEOPLE v. CALVERT.

(Supreme Court, General Term, Second Department. February 13, 1893.)

1. BURGLARY—INTENT TO STEAL—EVIDENCE.
     On a prosecution for burglary it appeared that defendant, during the daytime, entered the hall door of an apartment house, which had been locked, and that he went out immediately on being discovered. *Held*, that the jury were justified in finding that such entry was with intent to steal, where it further appeared that about a week later he again went to the house, and attempted to deliver to the woman, who alone occupied it during the daytime, a decoy letter, to induce her to leave the house, and that on his arrest a day or two later a key was found in his possession which fitted the hall door.

2. SAME—INDICTMENT—OCCUPANT OF APARTMENT HOUSE.
     The indictment properly charged the burglary to have been of the dwelling house of the woman who alone occupied the apartment house during the daytime, and who had locked the hall door for her protection.

3. SAME—BREAKING HALL DOOR.
     Pen. Code, § 503, which provides that each separate and distinct apartment of a building so constructed as to be occupied by different tenants shall be considered a separate building, does not render defective an indictment which charges the breaking in of the hall door of an apartment house as a burglary against the occupant of one of such apartments, all the others being vacant.

Appeal from court of sessions, Kings county.

George Calvert was convicted of burglary, and appeals. Affirmed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

William J. Courtney, for appellant.

James W. Ridgway, Dist. Atty., and John F. Clarke, Asst. Dist. Atty., for the People.

BARNARD, P. J. The defendant was indicted for burglary in breaking and entering the dwelling house of one Kate Higgins on the 24th of March, 1892. The proof shows that Kate Higgins lived

with her husband at No. 60 Heywood street, Brooklyn. She lived in an apartment house in which there were three separate apartments, but only one was occupied by her on the second floor. On the 24th of March, 1892, the lower hall door was locked. Mrs. Higgins heard a noise in the lower hall. She opened her door from the top of the stairs, and saw the defendant in the hall. He immediately went out upon seeing her. This was at midday, and Mrs. Higgins was alone in the house. At about the same hour on the 2d of April, 1892, he again went to the house, and rang the bell. Mrs. Higgins did not go down to answer the bell, but stood at the window, and saw the defendant take a piece of paper from his pocket. The defendant was arrested on the 4th of April, 1892, and there was found on him a key which fitted the Higgins' front door, and a letter written in these words:

"Dear Madam: Your husband met with a very serious accident on Broadway, and is now in St. Katharine's Hospital. Come as quick as possible, without delay.
"No. 60 Haywood Street."

Mrs. Higgins' husband had met with no accident, and was not taken to St. Katharine's Hospital. The proof was sufficient to sustain the indictment as to the burglarious entry on the 24th of March, 1892. He had a key afterwards, which fitted the lock, and there is no doubt but that he got in by means of this key. The jury were called upon to find his motive, and there can be but one conclusion,—that he entered to steal. The intent of the defendant is made still clearer by the fact that he attempted to deliver a decoy letter to get Mrs. Higgins to leave her house, so that with the key he had he could again enter, in her absence, and rifle the house. The judge committed no error in his question to the jury as to what the prisoner entered the house for. He left the answer to the jury. The burglary was properly charged and proven as against Mrs. Higgins. She was the only occupant of the house, and the front door was her sole protection, and entry there was aimed at Mrs. Higgins and no other person. · She locked the door, and it was an offense against her possession for the defendant to break it open with intent to steal. Neither section 503[1] of the Penal Code nor the case of Rodgers v. People, 86 N. Y. 360, is against this view. The conviction and judgment should therefore be affirmed. All concur.

---

[1] Section 503 of the Penal Code is as follows: "If a building is so constructed as to consist of two or more parts, intended to be occupied by different tenants, usually lodging therein at night, each part is deemed the separate dwelling house of a tenant occupying the same. If a building is so constructed as to consist of two or more parts, occupied by different tenants for any purpose, each part or apartment is considered a separate building, within the meaning of this chapter."